STATE OF WEST VIRGINIA

SUPREME COURT OF APPEALS

FILED
February 3, 2015
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**CITY OF WHEELING,**
**Employer Below, Petitioner**

**vs.)   No. 14-0498** (BOR Appeal No. 2048945)
                          (Claim No. 2012023055)

**ROBYN L. MARRINER,**
**Claimant Below, Respondent**

## MEMORANDUM DECISION

Petitioner City of Wheeling, by Denise D. Pentino and Aimee M. Stern, its attorneys, appeals the decision of the West Virginia Workers' Compensation Board of Review. Robyn L. Marriner, by Jonathan C. Bowman, his attorney, filed a timely response.

This appeal arises from the Board of Review's Final Order dated April 28, 2014, in which the Board reversed a November 5, 2013, Order of the Workers' Compensation Office of Judges and granted Mr. Marriner a 10% permanent partial disability award. In its Order, the Office of Judges affirmed the claims administrator's September 13, 2012, decision which granted Mr. Marriner a 4% permanent partial disability award. The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Mr. Marriner, a police officer, was injured in the course of his employment on January 17, 2012, when he was in a car accident. Treatment notes from Ohio Valley Medical Center's emergency room indicate he was diagnosed with left eyelid lacerations, a right lower extremity open fracture, and a left orbital floor fracture. He underwent surgery to treat the leg fracture and to repair the left eyelid lacerations. Mr. Marriner was seen for a consultation for his orbital floor fracture by James Shope, M.D. Dr. Shope stated that no further surgery was recommended. Mr.

1

Marriner underwent physical therapy for his right leg injury. Progress notes indicate he responded well to the therapy and regained much of his range of motion, muscle strength, and endurance. A July 11, 2012, treatment note by Richard Glass, M.D., Mr. Marriner's treating physician, indicates Mr. Marriner still had minor pain in his foot and ankle, he could feel the rod in his leg, and his leg was still swelling. Dr. Glass stated that Mr. Marriner had minimal symptoms and had resumed his normal activities.

Two independent medical evaluations were performed in order to determine the amount of permanent impairment Mr. Marriner suffered as a result of his compensable injury. The first evaluation was performed on September 10, 2012, by Sushil Sethi, M.D. At that time, Mr. Marriner reported soreness in his right leg, more so at the ankle. He stated that he does his own exercises and could do his job without difficulty. He had no vision problems and required no ongoing treatment for his facial laceration or his orbital floor fracture. Dr. Sethi noted a faint, well-healed scar in the left eye area. Using the American Medical Association's *Guides to the Evaluation of Permanent Impairment* (4th ed. 1993) he assessed 1% impairment for the mild facial scaring and 0% for the orbital floor injury because there was no air passage defect. For the right leg, he assessed 3% impairment for ankle range of motion loss and 0% impairment for knee range of motion loss. His total impairment assessment was 4%. Based upon Dr. Sethi's report, the claims administrator granted Mr. Marriner a 4% permanent partial disability award on September 13, 2012.

A second independent medical evaluation was performed by Bruce Guberman, M.D., on November 15, 2012. In that evaluation Mr. Marriner reported constant pain in his right knee, foot, ankle, and the fracture site of his tibia. He also reported stiffness, redness, warmth, and swelling in the right knee. He stated that he had tenderness and sensitivity to touch in his left eye area, especially over the scar. Using the American Medical Association's *Guides,* Dr. Guberman assessed 8% impairment for the right leg injury. He noted range of motion deficits in the right ankle and knee as well as significant symptomatic scarring. Specifically, he found 10% impairment for range of motion abnormalities in extension and flexion of the right knee and 7% impairment for range of motion abnormalities in plantar flexion and extension of the right ankle. He found 2% impairment for abnormalities in inversion and eversion in the right hind foot. Additionally, he assessed 2% impairment for facial scarring because the scars were symptomatic and disfiguring. His total impairment assessment was 10%.

The Office of Judges affirmed the claims administrator's decision in its November 5, 2013, Order. It found that the only reports of record that assessed Mr. Marriner's permanent impairment were the independent medical evaluations of Drs. Guberman and Sethi. The Office of Judges determined that Dr. Guberman found more than twice the impairment that Dr. Sethi did, and his recommendation was not supported by the medical evidence provided by Mr. Marriner's treating physicians. It was found that Dr. Guberman's statements that Mr. Marriner's facial scars are symptomatic and disfiguring were inconsistent with Dr. Shope's reports. Dr. Shope, the plastic surgeon who was consulted for Mr. Marriner's orbital floor fracture, found no visual difficulties. It was noted that Mr. Marriner underwent an extensive eye examination by William Strauch, M.D., and no vision problems were found. The Office of Judges found no indication that Mr. Marriner reported that his scars were symptomatic to either physician. It was

found that Dr. Guberman indicated in his report that Mr. Marriner followed up with Dr. Strauch and that he may need a scar revision; however, the report was not submitted into the evidentiary record. Lastly, while Dr. Sethi assigned 1% impairment for the facial scars, he did not indicate that they were symptomatic.

In regard to Mr. Marriner's right lower extremity, the Office of Judges found that when Dr. Glass last treated him on July 11, 2012, he noted that there were only minimal symptoms and that he was able to perform all activities that he previously engaged in. This report was determined to contradict Dr. Guberman's findings regarding reduced knee range of motion and significant symptomatic scarring. Additionally, it was concluded that Dr. Guberman found no evidence of muscle weakness or atrophy in the lower extremities and noted that Mr. Marriner's right calf was larger than the left, the opposite of what would be expected with the degree of impairment Dr. Guberman found for range of motion. The Office of Judges acknowledged that Dr. Guberman performed testing for abnormalities in inversion and eversion of the right hind foot for which he found 2% impairment. Dr. Sethi failed to perform this assessment. However, the Office of Judges ultimately concluded that Dr. Sethi's report was entitled to greater evidentiary weight than that of Dr. Guberman.

The Board of Review reversed the Office of Judges' Order and granted Mr. Marriner a 10% permanent partial disability award on April 28, 2014. It found that Dr. Guberman utilized the American Medical Association's *Guides* in arriving at his findings of 8% impairment for the right leg and 2% impairment for scarring. The Board of Review found that his recommendation was relevant, credible, material, and reliable. In light of the preponderance of the evidence standard set forth in West Virginia Code § 23-4-1g (2003), it held that Mr. Marriner was entitled to a 10% permanent partial disabiltiy award. West Virginia Code § 23-4-1g provides that when the evidence of record is of equal weight, the resolution most favorable to the claimant will be adopted.

On appeal, the City of Wheeling argues that the Office of Judges was correct to find that Dr. Guberman's finding of 10% impairment was unsupported by the medical records of Mr. Marriner's treating physicians. It asserts that the Office of Judges was also correct in its determination that Dr. Guberman's findings are contradicted by information contained in his own report, and these inconsistencies diminished the report's credibility. Mr. Marriner argues that the Office of Judges failed to provide an analysis of Dr. Sethi's report. He further asserts that Dr. Guberman's report was performed in accordance with the American Medical Association's *Guides* and was more reliable than Dr. Sethi's.

After review, we agree with the reasoning and conclusions of the Board of Review. The credibility of Dr. Guberman's assessment was not rebutted by Dr. Glass's treatment note as the Office of Judges found. Dr. Glass noted on July 11, 2012, that Mr. Marriner reported that he still had a little bit of pain in his foot and ankle, he could feel the rod in his leg, and his leg was still swelling. Though he had resumed his normal activities, he obviously still had pain and symptoms as a result of the compensable injury. Dr. Guberman performed a more thorough evaluation of Mr. Marriner's impairment than Dr. Sethi. Dr. Sethi failed to assess his hind foot range of motion

impairment. Dr. Guberman was also not incorrect to find 2% impairment for the facial scarring. Dr. Sethi also found impairment for the scars.

For the foregoing reasons, we find that the decision of the Board of Review is not in clear violation of any constitutional or statutory provision, nor is it clearly the result of erroneous conclusions of law, nor is it based upon a material misstatement or mischaracterization of the evidentiary record. Therefore, the decision of the Board of Review is affirmed.

Affirmed.

**ISSUED:  February 3, 2015**

**CONCURRED IN BY:**
Chief Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II

**DISSENTING:**
Justice Robin J. Davis
Justice Brent D. Benjamin

4